UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12092-RGS

GLENN PRIOLO and
ALLISON PRIOLO

v.

THE TOWN OF KINGSTON,
MASSACHUSETTS, JILL R. MEYERS as she
is the ADMINISTRATOR OF THE TOWN
OF KINGSTON, and SANDRA D.
MACFARLANE, DENNIS N. RANDALL,
RICHARD J. ARRUDA, MARK S. BEATON,
and JOSEPH F. CASNA, JR. as they are
members of the BOARD OF SELECTMEN
FOR THE TOWN OF KINGSTON,

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT

February 9, 2011

STEARNS, D.J.

Glenn Priolo and his wife, Allison Priolo, brought this lawsuit in the Plymouth Superior Court after a widening of Pembroke Street (a/k/a Route 27), overseen by Town of Kingston engineers, among others, encroached on the driveways and other improvements on their homestead. In essence, the Priolos contend that the Town, its Administrator, and the complicit Board of Selectmen refused to honor promises to restore their property to its pristine state while remediating the properties of eight other "similarly situated" homeowners abutting Route 27. Defendants moved to dismiss the action in the Superior Court, prompting the Priolos to amend their Complaint by adding, perhaps

improvidently, First Amendment and Equal Protection Clause claims.[1] Seizing the opportunity, defendants removed the case to this court and filed a second motion to dismiss, citing Fed. R. Civ. P. 12(b)(6) – the failure to state a claim upon which relief may be granted.

BACKGROUND

The facts as pled are viewed in the light most indulgent to the plaintiff, although to survive a motion to dismiss, these facts must ultimately give shape to "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted). With that important caveat in mind, the relevant facts are these.

Glenn Priolo, the owner of a contracting business, has made substantial improvements to the Priolos' Pembroke Street home, installing stamped driveways, stonework, gates, landscaping, and a granite and post rail fence enclosing the front yard. In 2006, the Commonwealth and the Town of Kingston finalized plans to upgrade the

---

[1]The Amended Complaint sets out the following counts: breach of contract (Count I); promissory estoppel (Count II); intentional misrepresentation (Count III); an Equal Protection Clause claim under the U.S. Constitution (Count IV); equal protection and First Amendment claims under the U.S. Constitution (Count V); and threats, intimidation, and coercion in violation of the State Civil Rights Act (Count VI); all alleged against defendants Town of Kingston, Jill R. Meyers as the Town Administrator, and Sandra D. MacFarlane, Dennis N. Randall, Richard J. Arruda, Mark S. Beaton, and Joseph F. Casna, Jr. as members of the Board of Selectmen of the Town. Defendants are variously named in their official and personal capacities.

stretch of Route 27 that abuts the Priolos' property. After discovering a row of construction stakes planted in his front yard, Glenn Priolo contacted state highway officials. They assured him that his property would be completely restored once the Route 27 project was completed. Over the next eighteen months, Priolo met with State and Town officials, the several contractors and project engineers involved, and Paul Basler, the Town's Highway Superintendent.

By April of 2010, Priolo realized that the Route 27 project would have a major impact on his driveways and front yard, including the removal of his fences and the alteration of the grade and length of his driveways. Priolo repeatedly requested, and the Town repeatedly promised, that all necessary restorative repairs would be made. On May 11, 2010, the Town's Board of Selectman voted to fund the remediation of the nine affected properties along Pembroke Street, including the Priolos' home.

On May 24, 2010, state workers rebuilt the stone wall around the perimeter of the Priolos' front yard. The Town, however, balked at the cost of regrading the Priolos' driveways. The Priolos eventually agreed with Basler and Selectman Joseph Casna on a $36,000 price for the Priolos to complete the remediation. With the Town's approval, Priolo used his own construction crew, materials, and equipment "to change his grades and prepare his driveways for stamped-concrete installation."

At some point after this work had been completed, Jay Talerman, the Town Counsel, informed Glenn Priolo in a "hostile and threatening manner" that no one other than Administrator Meyers, Selectmen Chairwoman MacFarlane, or he, in his capacity as Town Counsel, had the authority to legally bind the Town. Talerman later told Priolo that

3

the Town would not reimburse his costs or pay to remediate his property "because of the lack of resources and because the State did not feel as though it had any responsibility for this matter, there was nothing that they could do for the Priolos." Despite the Town's protestations of impoverishment, it completed the remedial work at the eight other Pembroke Street properties. The Priolos claim that they were "treated differently than ['other similarly situated Caucasians'] who in fact were allowed to do concrete driveways all the way onto the Town's property." The Priolos attribute the differential treatment to retaliation for Glenn Priolo's exercise of his First Amendment rights in standing up to Town officials.

## DISCUSSION

The only Count of the Amended Complaint at issue is Count V, which asserts a Fourteenth Amendment equal protection claim and a First Amendment retaliation claim under the Federal Civil Rights Act.[2] The threshold for a viable equal protection claim in the context of a property-use dispute between citizens and municipal officials is quite high; it requires a showing of "gross abuse of power, invidious discrimination or fundamentally unfair procedure." Creative Env'ts Inc. v. Estabrook, 680 F.2d, 822, 832 n.9 (1st Cir. 1982). See also Torromeo v. Town of Fremont, 438 F.3d 113, 118 (1st Cir. 2006) ("[O]nly in 'extreme circumstances' will a land-use dispute give rise to an equal protection claim."). While equal protection claims typically focus on the alleged differential treatment of classes of persons with respect to their fundamental civil rights, an equal protection claim

---

[2]Count IV attempts to assert a claim directly under the Equal Protection Clause of the Fourteenth Amendment. The claim is duplicative of the one more properly brought in Count V under the Federal Civil Rights Act, 42 U.S.C. § 1983.

4

can be brought by a "class of one" where a plaintiff is able to demonstrate that "she has been intentionally [and vindictively] treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). "Plaintiffs claiming an equal protection violation must first 'identify and relate *specific instances* where persons *situated similarly in all relevant respects* were treated differently.'" Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (emphasis in original), quoting Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995). Here, putting aside the breach of contract, misrepresentation, and estoppel claims, the Priolos allege little more than that eight other homeowners received more help from the Town in remediating their property than they did. The "similarly situated" requirement is scrutinized with particular rigor in land use related cases lest every municipal dispute over property rights finds its way to federal court in the guise of an equal protection claim. "The burden that a class of one plaintiff must carry at the summary judgment stage is considerably heavier than a mere showing that others have applied, with more auspicious results, for the same benefit that he seeks. . . . Were the law otherwise, the federal court would be transmogrified into a supercharged version of a local zoning board – a zoning board on steroids, as it were." Cordi-Allen v. Conlon, 494 F.3d 245, 252 (1st Cir. 2007).

The weakness in the pleading of the Priolos' First Amendment retaliation claim is similar. The first step in analyzing such a claim requires the court to determine whether the expression at issue "was protected in the first place." Hennessy v. City of Melrose, 194 F.3d 237, 245 (1st Cir. 1999). To be protected, speech must implicate at some level a

5

matter of public concern. See Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). Cf. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). Here, the Complaint is directed not to speech on any matter of great public concern, but to speech on matters of mostly private concern to the Priolos. The Priolos' Opposition to the motion to dismiss suggests that their objection is to the decision of the Board of Selectmen to deny their petition for reimbursement of the costs of restoring their property. See Pls.' Opp. at 26. If that is the case, the "speech" of the Selectmen is as deserving of as much, if not more, First Amendment protection as that of the Priolos. First Amendment protections extend to votes on "public issues by a member of a public agency or board." Miller v. Town of Hull, 878 F.2d 523, 532 (1st Cir. 1989) (an "unassailable" principle). See also Stella v. Kelley, 63 F.3d 71, 75-76 (1st Cir. 1995) ("Voting by members of municipal boards, commissions, and authorities comes within the heartland of First Amendment doctrine, and the status of public officials' votes as constitutionally protected speech was established beyond peradventure of doubt at the time the selectmen defenestrated the plaintiffs.").

In sum, the court is dubious that this garden-variety dispute between disappointed landowners and a recalcitrant group of municipal officials deserves to be amplified into a grand constitutional drama. The court is, however, sensitive to the fact that summary dispositions are to be approached cautiously when a complaint involves an alleged violation of First Amendment rights. Cf. Guilloty Perez v. Pierlusi, 339 F.3d 43, 55-56 (1st Cir. 2003). Consequently, I will deny the motion to dismiss without prejudice, and permit plaintiffs to elect one of the two following options: (1) they may voluntarily dismiss the federal claims, in which case I will remand the state claims to the Plymouth Superior Court,

see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); or (2) they may undertake 120 days of (reciprocal) discovery, including depositions, with a view to further amending their Complaint to satisfy the court that they have a plausible entitlement to *federal* constitutional relief. Should plaintiffs elect the second option, defendants will be permitted 30 days after the expiration of the 120-day reciprocal discovery period to file a motion for summary judgment directed to all claims in the case, state and federal.

## ORDER

For the foregoing reasons, defendants' Motion to Dismiss the Amended Complaint is <u>DENIED</u> without prejudice. Plaintiffs will file a notice of election with the court within fourteen (14) days of the date of this Order.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE