UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12092-RGS

GLENN PRIOLO and ALLISON PRIOLO

v.

THE TOWN OF KINGSTON, MASSACHUSETTS, JILL R. MYERS as she is the
ADMINISTRATOR OF THE TOWN OF KINGSTON , and SANDRA D.
MACFARLANE, DENNIS N. RANDALL, RICHARD J. ARRUDA, MARK S.
BEATON, and JOSEPH F. CASNA, JR. as they are members of the BOARD OF
SELECTMEN OF THE TOWN OF KINGSTON

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

March 20, 2012

STEARNS, D.J.

Glenn Priolo and Allison Priolo (the Priolos), who are husband and wife, allege

that the Town of Kingston and Town officials violated their right to equal protection

of the laws by breaking a promise to restore stamped concrete driveways and other

fixtures after a road widening project encroached on their front yard. They further

allege that Town officials retaliated against them in violation of their First Amendment

rights when they persisted in pressing their grievances over the highway project. They

also assert common-law claims for breach of contract, promissory estoppel, and

intentional misrepresentation, and statutory violations of the State Civil Rights Act.

Defendants move for summary judgment on all claims.  For the reasons to be stated, defendants' motion will be granted with respect to the federal constitutional claims (Counts IV and V).  The court will decline supplemental jurisdiction over the remaining state-law claims.

BACKGROUND

The Priolos initially brought this suit in the Plymouth Superior Court on October 8, 2010.  After defendants moved to dismiss that action, the Priolos amended the Complaint to add the First Amendment and equal protection claims.  On December 2, 2010, defendants removed the case to this court on federal question grounds.  They then renewed their motion to dismiss for failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).

In considering the motion to dismiss, the court noted that in *Torromeo v. Town of Fremont*, 438 F.3d 113, 118 (1st Cir. 2006), the First Circuit had set a very high bar for the Priolos' effort to plead a viable equal protection claim.  *Priolo v. Town of Kingston*, 2011 WL 565626, at *2 (D. Mass. 2011).  The court gave the Priolos the option of voluntarily dismissing the federal claims and taking a remand to the state court, or undertaking 120 days of discovery "with the view to further amending their Complaint to satisfy the court that they have a plausible entitlement to *federal* constitutional relief. "  *Id.* at *3 (emphasis in original).

The Priolos elected the second option.  Dkt # 10.  Discovery, after several extensions, has concluded.  The Priolos have not amended their Complaint.  The court heard oral argument on defendants' motion for summary judgment on March 13, 2012.

*Factual Background*

The Priolos own a home abutting Pembroke Street/State Route 27 in Kingston, Massachusetts (Town).  In the early 1990's, the Massachusetts Department of Transportation (MassDOT) and the Town began planning a widening and regrading of Route 27.  In 1999 and 2001, when the State received federal funds to complete the project, the Town, in the person of Highway Superintendent Paul Basler, contacted Townspeople along Route 27 to discuss the impact on their property of the proposed changes to the elevation of the road.  The Town also sought temporary construction easements and rights of entry from the affected residents.  At this time, the Priolos did not grant the Town a right of entry.

In 2002 through 2003, Glenn Priolo, who owns a contracting business, put in stamped concrete driveways on both sides of his home, and installed landscaping and a granite and post rail fence.  Stamped concrete driveways give the appearance of stone, and are significantly more expensive to install than plain concrete driveways. Although unbeknownst to Glenn Priolo at the time, his driveways and perimeter fencing extended several feet onto Route 27.  Prior to the regrading of Route 27, the Priolos'

driveways were essentially flat with only a two percent downward grade.

In 2003, the Priolos agreed to the Town's request for a right of entry.  Several years passed without any visible progress on the project.  Sometime in 2007, after seeing surveyor's stakes planted on what he believed to be his property, Glenn Priolo contacted MassDOT to express his concerns about the impact of the impending work. He received assurances from MassDOT that, consistent with its policy, his property would be restored to its then-existing condition after the completion of the work.

Actual construction along Route 27 began in April of 2008, but did not reach the Priolos' property for another year and a half.  In the interim, Glenn Priolo met with Basler, the Town engineers (SEA Consultants), and the contractors (Lawrence Lynch Corporation) to discuss the work.  Priolo's principal concern was that the planned cut – 32 inches – in the height of the road would result in a substantial difference in elevation between his property and the new paving, and would require major excavation work to bring his driveways down to the new road surface.  After hearing Priolo's complaints, the engineers reduced the planned cut to 24 inches.[1]

The change in the depth of the cut did not assuage Priolo's concerns.  In the spring of 2010, he met with Basler, the engineers, the contractors, and the Town

---

[1] The Priolos allege that at 240 Pembroke Street, a more significant design change – the waiver of a line of sight grades – was made, which could have been extended another one-eighth mile to their property.

Administrator Jill Myers, the Chairwoman of the Town's Board of Selectmen Sandra McFarlane, and other Town and State officials to discuss the remediation of his property. As a result of the road work, the Priolos' granite and post fence, portions of the stamped concrete driveways, and some landscaping were demolished. In the meetings with Town officials, it was agreed that a stone wall along his entire front yard would be required to protect the newly-laid utility lines from frost and exposure, and to support and stabilize his property. Town officials also discussed having Priolo redo the stamped concrete driveways at cost in order to save the Town money, although at the time, no agreement was reached.

On May 11, 2010, the Town's Board of Selectmen met in an executive session with Myers and Basler. The Board believed that State funds would be available to remediate all nine affected properties along Route 27. The Board unanimously voted to authorize Basler to "resolve the specific issues with the nine residents." Construction of a new stone wall around the Priolos' front yard soon began.

A few days later, Basler told Glenn Priolo that the Town was prepared to fund the repair and replacement of the Priolos' driveways with regular concrete, but would not pay for stamped concrete. Glenn Priolo refused the offer and insisted on stamped concrete driveways.

On May 25, 2010, Basler informed Glenn Priolo that the State was no longer in

a position to fund the remediation work as it was outside of the scope of the original project. However, on the same day, Priolo met with Basler and Selectman Joseph Casna, who told him that the State had agreed to address the remediation issue. After a long and heated discussion, Priolo, Basler, and Casna agreed that for $36,000, Priolo would do the restoration work himself on condition that the project's stone masons erect a stonewall next to the house for which Priolo would pay $1,000.

Over the next several days, Basler and Casna told Priolo that a written agreement memorializing their verbal understanding was being drafted and reviewed. Priolo brought in workers and equipment and began to prepare the driveways for the installation, including removing the remaining stamped concrete and excavating the driveways to a steeper grade to meet the new road.

On June 2 or 3, 2010, Priolo received a phone call from Myers' office inviting him to attend a meeting the following week with Town Counsel Jay Talerman and MacFarlane. Priolo was asked to suspend any further work on the property in the meantime. At the meeting, Talerman told Priolo that only he, Myers, and MacFarlane had the authority to bind the Town in contractual matters. Priolo believed that Talerman's tone at the meeting was hostile and threatening. He told Talerman that he would give the Town 48 hours to address the remediation issue.

Two days later, Talerman and Myers called Priolo and told him that because of

the Town's lack of resources and the State's disavowal of any responsibility for the remediation, there was nothing that they could do.  Dissatisfied with this response, Priolo continued to complain aggressively to the Town, including at Board of Selectmen meetings on July 6, 2010, July 19, 2011, and October 12, 2010.

In a letter to Glenn Priolo dated July 7, 2010, Myers stated that while the Town would work with him in addressing the issues with his property, it could not undertake the full cost of replacing his driveways, nor did it believe itself responsible for the extra expense.  Myers also indicated that to the extent that Priolo's contemplated driveway work were to involve the Town's right of way, he would be required to obtain a license from the Town to proceed with the work.[2]  In October of 2010, the Town told Priolo that the State had agreed to install 16 feet of stamped concrete driveway (Priolo's driveway is 40 feet long), even though it believed that it was responsible for only eight feet under the terms of the project.  Priolo rejected the offer.

In addition to the Priolos, the properties of eight other residents of the Town required remediation because of the work on Route 27.  These eight residents had their properties restored to their same or better condition.  For example, at 202 Pembroke Street, a sidewalk was bisected and a concrete driveway apron poured on the Town

---

[2] As the facts make clear, this case is not a reprise of *Kelo v. City of New London*, 545 U.S. 469 (2005).  The Town was not seeking to take property from the Priolos.  Rather, the Priolos had (innocently) invaded property belonging to the Town.

right-of-way.  At the adjacent property, concrete retaining walls were replaced with stone walls, while fences, drainage, concrete driveway aprons, and sidewalks were installed.  At 150 Pembroke Street, the sidewalk was moved to the opposite side of Route 27 to preserve five arborvitae plants.  At 147 Pembroke Street, a concrete driveway was re-poured, again using the right-of-way.  At 249 Pembroke Street, a freestanding stone wall was installed.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986).  The moving party bears the burden of establishing that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Count V of the Priolos' Amended Complaint asserts a Fourteenth Amendment equal protection claim under both a "class of one" and a more conventional "class of

nine" theory, as well as a First Amendment retaliation claim, all brought under the

Federal Civil Rights Act, 42 U.S.C. § 1983.[3]  I will address each in turn.

### *Equal Protection Claim*

While equal protection claims typically focus on alleged differential treatment

of classes with respect to their fundamental civil rights, an equal protection claim may

be brought by a "class of one" where a plaintiff can demonstrate that he has been

"intentionally treated differently from others similarly situated, that no rational basis

exists for that difference in treatment, and that the different treatment was based on a

malicious or bad faith intent to injure." *Buchanan v. Maine,* 469 F.3d 158, 178 (1st

Cir. 2006).  To prevail on a "class of one" claim, the Priolos must prove each of the

four elements – "1) that [they were] intentionally treated differently 2) from others

similarly situated 3) without a rational basis for that difference in treatment *and* 4) that

the difference in treatment was due to malicious or bad faith intent on the part of the

defendants to injure [them]." *Walsh v. Town of Lakeville*, 431 F. Supp. 2d 135, 145

(D. Mass. 2006) (emphasis in original).  To prevail on the "class of nine" theory,[4] the

---

[3] In Count IV of the Amended Complaint, the Priolos assert a claim directly under the Equal Protection Clause of the Fourteenth Amendment.  As previously noted, this claim is duplicative of the one more properly brought in Count V under the Federal Civil Rights Act, 42 U.S.C. § 1983.

[4] While the "class of nine" theory is not very well developed in the pleadings, at oral argument the Priolos' counsel argued that even if the treatment they received at the

Priolos must similarly show "that [they were] intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment." *Toledo v. Sanchez,* 454 F.3d 24, 34 (1st Cir. 2006).  Thus, the Priolos must prove the same first three elements of the "class of one" claim, but they need not show vindictiveness or malice on the part of the defendants.  The bar for the Priolos under either theory, as previously noted, is particularly high – "only in 'extreme circumstances' will a land-use dispute give rise to an equal protection claim." *Torromeo*, 438 F.3d at 118, quoting *SFW Arecibo Ltd. v. Rodriguez*, 415 F.3d 135, 142 (1st Cir. 2005).

Defendants argue that the Priolos have failed to meet the second prong of their burden under either theory because they have not "identif[ied] and relate[d] *specific instances* where persons *situated similarly in all relevant aspects* were treated differently." *Buchanan*, 469 F.3d at 178 (emphasis in original) (citation omitted).  The Priolos' counter is that their property, alone of the nine properties affected by the Route 27 project, was not restored to its same or better condition after the road work was

---

hands of Town officials was not maliciously motivated, there is no legitimate explanation for why the Priolos were the only one of the nine affected households that did not receive full remediation of their property.

completed.[5]

Defendants' response, with which the court agrees, is that the Priolos' general allegations of different treatment are of an insufficient magnitude to meet the equal protection standard. "The burden that a class of one plaintiff must carry at the summary judgment stage is considerably heavier than a mere showing that others have applied, with more auspicious results, for the same benefit that he seeks." *Cordi-Allen v. Conlon,* 494 F.3d 245, 252 (1st Cir. 2007). *See also Pagan v. Calderon*, 448 F.3d 16, 34 (1st Cir. 2006) (where the applicable law "vests the decisonmaker with discretionary authority to award or withhold a state benefit, a plaintiff who grounds an equal protection claim on the denial of that benefit faces a steep uphill climb.").

In this case, the Priolos' property was the only one of the nine homesteads that had stamped-concrete driveways, which were far more expensive to replace or repair than the plain vanilla concrete driveways of their neighbors. Glenn Priolo concedes that his property was the most heavily impacted by the road work, and that the remediation work done at the other eight properties was "minor in nature" compared to what would have necessary to restore his property to its pristine condition. Opp'n at 18-19. The cost differential alone demonstrates that there was not "an extremely

---

[5] The Priolos do not claim to belong to a "disfavored minority." They are middle-class Caucasians, as are all of the other affected Townspeople.

high degree of similarity" between the Priolos' and the other eight households.[6] *Cordi-*

*Allen*, 494 F.3d at 251, *see also id* at 252-253 (differences in the scale of proposed

construction projects rendered them incomparable for purposes of an equal protection

analysis);[7] *see also Toledo*, 454 F.3d at 34 (student had not identified other students

with similarly substantial tardiness/absence records who had received better than a

failing grade).

The Priolos' equal protection claim also fails because the basis for their different

treatment is not irrational.  Defendants offer several explanations for the difference.

---

[6] The Priolos assert in the alternative that their claim is "not that other homeowners received more help from the Town in remediating their property," but that the Town singled them out "particularly [because] of the mandate that they have a written agreement to repair their driveways." Opp'n at 16.  Defendants dispute this characterization and offer evidence that a similar license was required for at least one other property.  Even if Priolo's allegation is correct, it does not satisfy the "similarly situated" requirement because land-use decisions "will often, perhaps almost always, treat one landowner differently from another."  *Cordi-Allen*, 494 F.3d at 251, citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (Breyer, J., concurring).

[7] The Priolos also argue that *Cordi-Allen* is not controlling because this is not a land-use zoning case, as was *Cordi-Allen*.  However, an equal protection "class of one" plaintiff is required to "identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled . . . out for unlawful oppression," even in a non-zoning context.  *See Buchanan*, 469 F.3d at 178 (emphasis in original). Moreover, the rationale of the zoning cases is equally applicable here – a municipality's actions regarding private property necessarily depends on the specific situation of each property.  "Were the law otherwise, the federal court would be transmogrified into a supercharged version of a local zoning board – a zoning board on steroids."  *Cordi-Allen*, 494 F.3d at 252.

The most compelling of the explanations is that the Town did not have the discretionary funds necessary to replace the Priolos' driveways – the State, and not the Town, received and controlled the funding from the federal government for the Route 27 project.[8]  The Town also did not consider itself responsible for the full repair of the Priolos' driveways because the damage the driveways incurred was not as a result of a design flaw in the project, and because the majority of the requested repairs were on private rather than Town property.

At oral argument, the Priolos' counsel maintained that any rational basis analysis must take into account the defendants' state-of-mind at the time the contested decisions were made, and that the post-hoc explanation now offered by the Town was not what motivated Town officials in rejecting the Priolos' request.  However, "[t]he question is not what went on in the mind of the state actor but whether anyone, including the judge, can conceive of a rational reason for such a classification." *Jeneski v. City of Worcester,* 476 F.3d 14, 17 (1st Cir. 2007).  It takes no great leap of imagination to discern a rational basis for the Town's decision to offer less than a full remediation of

---

[8] The Priolos argue that there is a factual dispute because the Town did pay for some part of the construction, including the installation of two retaining stone walls along the edge of the sidewalk at 278 Pembroke Street.  This, however, is not evidence of unequal treatment because retaining stone walls were also installed around the Priolos' front yard.  The record further indicates that the Town *could* have been responsible for certain cost overruns on the Route 27 project, *see* Opp'n at 3, but there is no evidence that any such overruns occurred.

the Priolos' property – the Town was dependent on State funding for the remediation project, funding that the State either mis-budgeted or for whatever reason withdrew, leaving the Town high and dry with respect to the full remediation costs.

Moreover, the Priolos' have not demonstrated that defendants acted with malice or with a bad faith intent to injure them – an essential element of a "class of one" claim. Glenn Priolo asserts that he complained strenuously to the Board of Selectmen, and appeared at several confrontational Board meetings.  In response to an exchange of heated words at one Board meeting, a Selectman referred to Priolo as "an asshole" and then voted against granting the Priolos a license to do the driveway repairs themselves. This unfortunate incident, however, does not meet the "exceptionally deferential" standard that must be "scrupulously met" in "class of one" equal protection cases. *Walsh*, 431 F. Supp. 2d at 145, citations omitted.  To prevail, the Priolos must establish that they were subjected to "gross abuse of power, invidious discrimination or fundamentally unfair procedure." *Baker v. Coxe*, 230 F.3d 470, 474 (1st Cir. 2000). This standard is so stringent that "even an arbitrary denial of a permit in violation of state law – even in bad faith – does not rise above the constitutional threshold for equal protection and substantial due process claims." *Id*.

The treatment the Priolos received from the Town simply fails to rise to the level of a constitutional violation.  The record demonstrates that over the life of the project,

representatives of the Town attempted to work with the Priolos to address their concerns, offering, at different times, to replace their driveways with poured concrete, for Glenn Priolo to do the work himself at a lower cost, or to replace a portion of the driveways with stamped concrete.[9] Even at the October 2010 Board meeting at which a Selectman uttered a disparaging epithet about Glenn Priolo, the Board nonetheless voted to grant the Priolos the requested license. Regardless of whether defendants exhibited "misjudgments, wrongheadedness, [or made] mistakes" in their dealings with the Priolos, the record does not reflect the "utterly unjustified, malignant, and extreme actions of those who would be parochial potentates." *Id.*

Because an equal protection claim plaintiff must ultimately prevail on each of the three (or four) prongs of his burden to obtain relief, a court can properly grant summary judgment where any one prong is not met. *See, e.g.*, *Cordi-Allen*, 494 F.3d at 252 (failing to meet the similarly situated prong); *Buchanan*, 469 F.3d at 178 (same); *Toledo*, 454 F.3d at 34 (same); *Walsh*, 431 F. Supp. 2d at 148 (failing to meet the malice and bad faith prong). Here, the Priolos have failed to meet the similarly situated, irrational basis, and malice and bad faith prongs of the test(s). Consequently, summary judgment will be granted to defendants on the Priolos' equal protection claim.

_____

[9] Notably, this final offer occurred in October of 2010, after Priolo's appearances at the various heated Board of Selectmen meetings.

### *First Amendment Retaliation Claim*

"In order to succeed on a First Amendment retaliation claim, a party must show that [his] conduct was constitutionally protected, and that this conduct was a substantial factor [or] . . . a motivating factor driving the allegedly retaliatory decision." *Gorelik v. Costin*, 605 F.3d 118, 123 (1st Cir. 2010) (quotation marks and citations omitted). The Priolos have not identified the protected speech that allegedly motivated retaliation by the Town. Moreover, the Priolos have also failed to identify any retaliatory decision or adverse action taken by the Town or the individual defendants. At the May 11, 2010 Board of Selectmen meeting, when the Town believed that it had access to State funding, the Board voted to remediate all nine properties, including the Priolos', that were impacted by the road work. Following the vote, Basler offered to replace the Priolos' driveways with regular concrete, an offer that the Priolos rejected. Although the Town did not follow through on Basler's and Casna's suggestion that Glenn Priolo be "hired" to do the driveway work himself in exchange for a payment from the Town, there is nothing that suggests that the failure to do so was motivated by anything other than a lack of money. Finally, in October of 2010, despite Glenn Priolo's "aggressive complaining" at the July and October 2010 Board of Selectmen meetings, and a Selectman's name-calling at one of the meetings, the Town extended to the Priolos yet another offer to undertake at least partial remediation of their driveways and voted to

issue the necessary license.[10]  Because the Priolos have failed to identify the protected

speech and any causally related adverse action, summary judgment will also be granted

to defendants on the Priolos' First Amendment retaliation claim.

## CONCLUSION

While the court understands and sympathizes with the Priolos' frustration with

the impact that the Route 27 project had on their property, the United States

Constitution is not the appropriate legal vehicle for them to obtain relief.  If such a

vehicle exists, it is to be found in the state and not the federal courts.  Consequently,

defendants' motion for summary judgment is granted as to the Priolos' federal

constitutional claims (Counts IV and V).  The court declines supplemental jurisdiction

over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) (a district court may

decline to exercise supplemental jurisdiction if it "has dismissed all claims over which

it has original jurisdiction.").  The Clerk will remand the Priolos' remaining state law

claims to the Superior Court, and close the federal case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[10] In any event, as previously noted, the Board of Selectmen's individual votes on Town matters are themselves protected by the First Amendment.  *See Miller v. Town of Hull*, 878 F.2d 523, 532 (1st Cir. 1989).